SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**C.V. v. Waterford Township Board of Education (A-24-22) (087260)**

**Argued June 1, 2023 -- Decided September 12, 2023**

**WAINER APTER, J., writing for the Court.**

The Court considers whether the Law Against Discrimination (LAD) claims brought by C.V. and her parents were properly dismissed by the trial court. The Appellate Division affirmed the dismissal, concluding that the LAD does not apply "to a sexual predator's assault of a student on a school bus where there is no evidence his actions were based solely on the victim's status as a member of a protected group." 472 N.J. Super. 581, 593 (App. Div. 2022) (emphasis added).

For five months when C.V. was a pre-kindergarten student, she was repeatedly sexually assaulted by Alfred Dean, a 76-year-old school bus aide. C.V.'s parents only discovered the abuse when C.V. came home without her underwear one day. Dean was indicted and pled guilty to first-degree aggravated sexual assault.

C.V. and her parents sued the Waterford Township Board of Education and Waterford Township School District (collectively, Waterford) alleging, among other things, discrimination in a "place of public accommodation" "on account of . . . sex" in violation of the LAD, N.J.S.A. 10:5-12(f). Dean admitted in his deposition that he had sexually abused at least five children, including his own stepson, over a period of decades. During discovery, plaintiffs submitted evidence that although there were male and female children on the bus with C.V., Dean was only accused of sexually assaulting other female students, not male students.

The trial judge granted summary judgment to Waterford on plaintiffs' LAD claim, finding that "a reasonable jury could not conclude that" any harassment occurred "because of" C.V.'s sex. The court denied plaintiffs' motions to amend the complaint by adding claims for age discrimination and common law sexual harassment and to compel production of records related to Dean's intent. The Appellate Division affirmed, holding that the record in this case "contained no evidence that [Dean] acted because of [C.V.]'s gender" and instead "indicated that his conduct was fueled by his pedophilia, and not gender discrimination." 472 N.J. Super. at 598. The Court granted certification. 252 N.J. 377 (2022).

1

**HELD:**  The Court reverses the Appellate Division's judgment because it conflicts with Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587 (1993), and L.W. v. Toms River Regional Schools Board of Education, 189 N.J. 381 (2007).  Under Lehmann, sexual touching of areas of the body linked to sexuality happens, by definition, because of sex.  The Court affirms the denial of plaintiffs' motions to amend their complaint and to obtain certain records.

1.  The LAD proscribes discrimination "because of" sex in employment.  N.J.S.A. 10:5-12(a).  In places of public accommodation, discrimination "on account of" sex is forbidden.  Id. at (f).  Yet despite this difference in wording, the protections against sex discrimination in employment and places of public accommodation are the same.  "Because of" and "on account of" both incorporate the traditional standard of but-for causation.  Under that standard, one event can have multiple but-for causes.  In the context of anti-discrimination law, that means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged decision.  If the plaintiff's sex was one but-for cause of that decision, liability may attach.  (pp. 18-20)

2.  In 1986, the Supreme Court held that "sexual harassment," including "[u]nwelcome . . . physical conduct of a sexual nature," constitutes sex discrimination under Title VII of the Civil Rights Act of 1964.  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986).  The Court followed in 1993, holding that "[s]exual harassment is a form of sex discrimination that violates both Title VII and the LAD."  Lehmann, 132 N.J. at 601.  In Lehmann, the Court announced a four-part test "[t]o state a claim for hostile work environment sexual harassment," with the first part requiring that a plaintiff allege conduct that "would not have occurred but for the employee's gender."  Id. at 603-04.  The Court explained that, "[w]hen the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied.  Thus when a plaintiff alleges that she has been subjected to sexual touchings . . . she has established that the harassment occurred because of her sex."  Id. at 605.  (pp. 20-23)

3.  In L.W., the Court adapted the Lehmann four-prong test to a school setting, holding that to state a claim under the LAD for student-on-student hostile school environment harassment, "an aggrieved student must allege," for the first part, "discriminatory conduct that would not have occurred 'but for' the student's protected characteristic," i.e., sex, sexual orientation, gender identity or expression, race, etc.  189 N.J. at 402-03.  Underlying that holding was the "basic principle" that sexual harassment is just as unacceptable in a school as it is in the workforce.  Id. at 407.  The Court explained that "a school district's 'first imperative must be to do no harm to the children in its care'" and that a school board must "take reasonable measures to assure that the teachers and administrators who stand as surrogate parents during the day are educating, not endangering, and protecting, not exploiting, vulnerable children."  Id. at 406.  (pp. 23-26)

2

4.  Here, plaintiffs presented evidence that C.V. was subjected to five months of unwanted sexual touching of her vagina.  Under Lehmann, that touching was inherently "because of" her sex.  132 N.J. at 605.  And, as the Court held in Lehmann, "[t]he LAD is not a fault- or intent-based statute."  Id. at 604.  Therefore, even if the Appellate Division were correct that Dean's conduct was "fueled by his pedophilia," and not by any intent to discriminate "because of [C.V.]'s gender," 472 N.J. Super. at 598, "the perpetrator's intent is simply not an element of the cause of action," Lehmann, 132 N.J. at 605.  The Appellate Division also found "no evidence that [Dean] acted because of [C.V.]'s gender" because of "his own deposition testimony and history of sexual abuse towards at least one boy."  472 N.J. Super. at 598.  The trial court reached the same conclusion, noting that Dean "is a compulsive sexual abuser of children, boys and girls."  In so doing, both courts relied on Dean's own self-serving deposition testimony and either did not consider "the competent evidential materials" plaintiffs presented, or failed to view them "in the light most favorable to" plaintiffs in disregard of the standard for assessing a motion for summary judgment.  Even if Dean sexually assaulted multiple boys in the past or had sexually touched the genitals of both girls and boys on the school bus, that would not preclude liability for sexual harassment.  It is not a defense "[f]or any owner, . . . manager, . . . agent, or employee of any place of public accommodation," N.J.S.A. 10:5-12(f), to say they did not discriminate "on account of" sex because they sexually touched the genitals of both male and female patrons or students.  And a plaintiff does not need to show that membership in a protected class was the sole reason for the discrimination or harassment; only that it was a motivating factor. The Court reviews additional arguments asserted by the defendants in this case and explains why they do not compel a different outcome.  (pp. 27-36)

5.  The Court affirms the Appellate Division's judgment as to plaintiffs' motions to amend their complaint and to obtain records of Dean's intent.  Amending plaintiffs' complaint to add a claim of age discrimination in violation of the LAD would have been futile because the LAD does not prohibit age discrimination in places of public accommodation.  As to plaintiffs' request to amend their complaint to state a claim for common law sexual harassment once any LAD sexual harassment claim was dismissed, the Court does not reach plaintiffs' request because dismissal of the LAD claims was improper.  Finally, given that Dean's subjective intent is irrelevant to plaintiffs' sexual harassment claims under the LAD, plaintiffs' reason for seeking the records is now moot.  (pp. 37-38)

**REVERSED IN PART, AFFIRMED IN PART, and REMANDED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and FASCIALE join in JUSTICE WAINER APTER's opinion.  JUDGE SABATINO (temporarily assigned) did not participate.**

3

C.V., a minor by and through
her parents and guardians ad litem,
C.V. and R.V., and
C.V. and R.V. individually
and in their own rights,

Plaintiffs-Appellants,

v.

Waterford Township Board of
Education, Waterford Township School
District, T&L Transportation, Inc.,
Theresa Bredell, and Leslie Bredell,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
472 N.J. Super. 581 (App. Div. 2022).

| Argued | Decided |
|--------|---------|
| June 1, 2023 | September 12, 2023 |

Leo B. Dubler, III, argued the cause for appellants C.V.,
a minor, C.V., and R.V. (Law Offices of Leo B. Dubler,
III, attorneys; Leo B. Dubler, III, and Melanie C. Playo,
on the briefs).

Michael S. Mikulski, II, argued the cause for respondents
Waterford Township Board of Education and Waterford
Township School District (Connor, Weber & Oberlies,

attorneys; Michael S. Mikulski, II, and Amelia M. Lolli, on the brief).

Jeremy M. Feigenbaum, Solicitor General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Jeremy M. Feigenbaum, Sundeep Iyer and Mayur Saxena, Assistant Attorneys General, of counsel, and Noemi Schor and Melissa Fich, Deputy Attorneys General, on the brief).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom and Jeanne LoCicero, on the brief).

Robert G. Devine submitted briefs on behalf of respondent T&L Transportation, Inc. (White and Williams, attorneys; Robert G. Devine, of counsel and on the briefs, and Kimberly M. Collins, on the briefs).

Claudia A. Reis submitted a brief on behalf of amicus curiae National Employment Lawyers Association of New Jersey (Lenzo & Reis, attorneys; Claudia A. Reis, of counsel and on the brief).

JUSTICE WAINER APTER delivered the opinion of the Court.

For five months when C.V. was a pre-kindergarten student in the Waterford Township School District, she was repeatedly sexually assaulted by Alfred Dean, the seventy-six-year-old bus aide who was supposed to be ensuring her safety. C.V.'s parents only discovered the abuse when C.V. came home without her underwear one day.

2

C.V. and her parents sued the Waterford Township Board of Education and Waterford Township School District (collectively, Waterford) alleging, among other things, discrimination in a "place of public accommodation" "on account of . . . sex" in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-12(f).

In Lehmann v. Toys 'R' Us, Inc., we held that sexual harassment is a form of sex discrimination under the LAD. We delineated a four-part test for an employee "[t]o state a claim for hostile work environment sexual harassment." 132 N.J. 587, 603-04 (1993). In L.W. v. Toms River Regional Schools Board of Education, 189 N.J. 381 (2007), we explicitly extended the Lehmann test to claims of hostile school environment sexual harassment brought against schools as places of public accommodation under N.J.S.A. 10:5-12(f).

The first prong of the Lehmann standard, on which this case turns, requires the plaintiff to allege that the harassment occurred because of their sex, or "would not have occurred but for" their sex. 132 N.J. at 603. In Lehmann, we specifically held that this first prong will automatically be satisfied when the plaintiff alleges sexual touching, which by nature occurs because of a person's sex. As we explained, "[w]hen the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied.

3

<u>Thus when a plaintiff alleges that she has been subjected to sexual touchings . . . she has established that the harassment occurred because of her sex.</u>" <u>Id.</u> at 605 (emphasis added).

Despite <u>Lehmann</u> and <u>L.W.</u>, the trial court granted summary judgment in favor of Waterford and dismissed plaintiffs' LAD claims. The court found plaintiffs could not, as a matter of law, prove to a jury that Dean's conduct occurred because of C.V.'s sex, or that it would not have occurred but for C.V.'s sex. According to the trial court, "the but for element can't be satisfied . . . where you have a compulsive sexual predator, a pedophile," especially one who testified at his deposition "that he is a compulsive sexual abuser of children, boys and girls." The Appellate Division affirmed, concluding that the LAD does not apply "to a sexual predator's assault of a student on a school bus where there is no evidence his actions were based <u>solely</u> on the victim's status as a member of a protected group." <u>C.V. v. Waterford Twp. Bd. of Educ.</u>, 472 N.J. Super. 581, 593 (App. Div. 2022) (emphasis added).

We reverse the Appellate Division's judgment because it conflicts with <u>Lehmann</u> and <u>L.W.</u> We reiterate that, under <u>Lehmann</u>, sexual touching of areas of the body linked to sexuality happens, by definition, because of sex.

4

We affirm the denial of plaintiffs' motion to amend their complaint and to obtain certain records, and we remand for further proceedings consistent with this opinion.

I.

A.

C.V. was in pre-kindergarten in the Waterford Township School District during the 2009-2010 school year. She rode a small bus to school. Waterford contracted with T&L Transportation, Inc. to provide bussing. David McDonnell was C.V.'s bus driver, and Alfred Dean was assigned as the bus aide. Waterford required that an aide be present on the bus to assist with child safety, among other things. Both McDonnell and Dean were T&L employees.

C.V.'s parents, C.V. and R.V., first realized something was wrong when C.V. came home from school in April 2010 without her underwear. When her parents asked her what happened, C.V. told them that Dean "took her underwear . . . because she had peed on the bus." When asked whether anyone touched her, C.V. eventually disclosed that Dean "stuck his fingers in her vagina and . . . told her not to tell her mommy or the police."

In a statement to the Camden County Prosecutor's Office (CCPO) in April 2010, C.V. stated that Dean "sticked his fingers in [her] vagina" and "sticked his fingers in [her] butt too" when she was on the school bus. She

5

said that Dean would say "abracadabra" and do "magic" and play "game[s]" in which he would pull down her underwear and digitally penetrate her vagina. C.V. made similar statements to Dr. Martin Finkel, Medical Director of the Child Abuse Research Education & Service Institute. She also told Dr. Finkel that "I was trying to take his finger off me but he wouldn't let me."

Dean admitted to the CCPO that he sexually assaulted C.V. during multiple bus rides between December 2009 and April 2010. He agreed that he covered the bus's video camera with a piece of paper and then rubbed C.V.'s thighs, vagina, and buttocks. He also admitted to putting his hands inside C.V.'s underwear and on her vagina.

David McDonnell was also questioned by the CCPO. He admitted that he knew that Dean both (1) covered the bus's video camera; and (2) removed the booster seats that were required to be on the bus, instead having the preschool children sit directly on the bus seats or on Dean's lap.

Dean was indicted and pled guilty to first-degree aggravated sexual assault. In preparation for sentencing, he was evaluated by the Adult Diagnostic and Treatment Center in Avenel (Avenel) and determined to be a "repetitive and compulsive" sex offender who "by his own admission . . . molested other children." Dean was sentenced to ten years'

6

imprisonment at Avenel, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

In May 2014, C.V., by and through her parents and guardians ad litem, C.V. and R.V., and C.V. and R.V. individually and in their own rights (collectively, plaintiffs), sued Waterford, T&L Transportation, Inc. and T&L principals Leslie and Theresa Bredell (collectively, T&L), and others (collectively, defendants). The complaint alleged negligence against Waterford and T&L (count one), sex discrimination in violation of the LAD against Waterford (count two), and sex discrimination in violation of the LAD against T&L (count three).

During his deposition in this case, Dean admitted that he had sexually abused at least five children, including his own stepson, over a period of decades. He stated it was "like a disease or something," "something that goes in your mind that . . . you can't control." In response to the question, "[h]ad it been a while since you had touched a child before you were on the T&L bus?" Dean said, "26 years or something like that."

Dean also admitted that even though the preschool children were required to sit in car seats on the bus, he took the car seats off the bus and put them in his shed. And he agreed that C.V.'s underwear was found in his van.

However, Dean testified that he never touched C.V.'s vagina and was "being accused of something I didn't even do." "[S]ome day," he insisted, "it'll come out that I never did it." Dean also stated that he was being honest about the children he had previously assaulted in the same way that he was being honest about never having touched C.V.

During discovery, plaintiffs submitted evidence that although there were male and female children on the bus with C.V. during the 2009-2010 school year, Dean was only accused of sexually assaulting other female students, not male students.

First, plaintiffs cited an arbitral award against Waterford finding that Dean sexually assaulted J.D., a four-year-old girl on C.V.'s school bus. The award specifically found that Dean played "games" with the children he abused, brought them stuffed animals, and digitally penetrated J.D.'s vagina and rectum. Second, plaintiffs offered C.V.'s 2017 forensic psychiatric evaluation report. In the report, the psychiatrist, Dr. Mala Gupta, concluded that another girl, "Lauren," was also sexually abused by Dean on the school bus and C.V. had likely witnessed that abuse. Third, plaintiffs pointed to McDonnell's interview with the CCPO before he died in 2011. During the interview, McDonnell stated that Dean would regularly "play magic wands" with multiple girls on the bus. When the CCPO investigator asked, "Did he

8

play abracadabra with any of the boys?" McDonnell responded, "I don't think so." Fourth, plaintiffs cited a court order granting the motion of minor female plaintiff G.G. and her parents to consolidate, for good cause shown and for purposes of discovery, their case against T&L and Waterford with this case.

Plaintiffs moved for partial summary judgment on liability on their LAD claims against Waterford and T&L (counts two and three). T&L cross-moved for partial summary judgment dismissing plaintiffs' LAD claim against them (count three).

The trial court held oral argument in 2017, denied plaintiffs' motion for summary judgment, and granted T&L's cross motion for summary judgment dismissing plaintiffs' LAD claim. The trial judge explained that she did "not find that the evidence in this case supports that this is an LAD case for a number of reasons." First, "[t]he but for element can't be satisfied . . . where you have a compulsive sexual predator, a pedophile." Second, the court did not agree "the LAD was intended to be stretched in this kind of situation." As the judge reasoned: "It's the Law Against Discrimination. There is no discrimination. He would abuse any child that -- you know, on that school bus. Unfortunately, for C.V., it was her."

Waterford then moved for partial summary judgment on plaintiffs' LAD claim against them (count two), and plaintiffs moved for reconsideration of the

9

court's decision granting summary judgment to T&L on count three. Plaintiffs also moved to amend their complaint to add claims of age discrimination in violation of the LAD and common law sexual harassment.

The judge denied plaintiffs' motion for reconsideration and granted summary judgment to Waterford on count two, reiterating that she did "not find that the facts in this case fall within the LAD." The trial court distinguished both Lehmann and L.W. because "there is no evidence here that [Dean] was engaging in the sexual abuse because of [C.V.] being a female. He . . . indicated [in his deposition] that he is a compulsive sexual abuser of children, boys and girls." (emphasis added). Therefore, "a reasonable jury could not conclude that" any harassment occurred "because of" C.V.'s sex.

The judge initially noted that she did not "see that, in this situation, the school bus is a [place of] public accommodation." However, the judge then agreed with defense counsel that "the essence of the ruling has nothing to do with whether or not a school bus is a place of public accommodation."

As to plaintiffs' motion to amend their complaint to include a claim for age discrimination under the LAD, the court found that any such amendment would be "futile," explaining "I just don't find that this is an LAD case." The court also concluded that allowing plaintiffs to amend their complaint to add a common law sexual harassment claim would be futile because any "common

10

law claim was supplanted or subsumed by the LAD," and once the LAD claim "is dismissed, so, too" is any claim for common law sexual harassment. "Otherwise, every time an LAD count is dismissed, plaintiff would file nearly identical common law counts, and essentially, have a second bite at the apple."

Because the trial court granted summary judgment on counts two and three in part based on its finding that Dean was a compulsive pedophile who did not intend to discriminate against C.V. because of her sex, plaintiffs moved to compel production of records related to Dean's intent from Avenel and the CCPO. The trial court orally denied both motions, finding Dean's records would be "irrelevant" "because it is undisputed that [Dean] pled guilty to sexually assaulting C.V. on the bus."

In June 2018, plaintiffs settled all claims against T&L except the LAD and common law sexual harassment claims, preserving their right to appeal those claims. In September 2020, plaintiffs entered into a similar agreement with Waterford, preserving their right to appeal the LAD claim.

### C.

The Appellate Division affirmed, holding that the LAD does not apply "to claims arising from a sexual predator's criminal assaults against a young schoolgirl . . . especially where, as here, there was no evidence that the predator's . . . behavior was the result of any proven intention to discriminate

11

specifically against young women." C.V., 472 N.J. Super. at 584. The Appellate Division clarified that it was not holding "that sexual assault on a school bus can never be" actionable under the LAD. Id. at 593. Rather, it held that the record in this case "contained no evidence that [Dean] acted because of [C.V.]'s gender. On the contrary, [Dean's] own deposition testimony and history of sexual abuse towards at least one boy and other girls, indicated that his conduct was fueled by his pedophilia, and not gender discrimination." Id. at 598.

The Appellate Division acknowledged Lehmann's holding that "when a plaintiff alleges that she has been subjected to sexual touchings . . . she has established that the harassment occurred because of her sex." Id. at 599 (quoting Lehmann, 132 N.J. at 605). However, it held that "[i]n this case, the presumption of harassment simply cannot apply, especially in light of the undisputed fact that [Dean]'s actions were the result of his pedophilia directed to all children." Ibid. (emphasis added).

The court agreed with plaintiffs "that a school bus is 'a place of public accommodation'" under the LAD, "and that [an] LAD claim may be based on conduct that violates other statutes, including our criminal statutes," but it did not find either dispositive in this case. Id. at 597 (quoting L.W., 189 N.J. at 401). The court did not address plaintiffs' motion to add an age discrimination

12

claim or common law sexual harassment claim, concluding that any remaining arguments "were either now moot, barred under the parties' settlement agreement, not properly raised before the motion judge, or without sufficient merit to warrant discussion in a written opinion." Id. at 599.

D.

We granted plaintiffs' petition for certification. 252 N.J. 377 (2022). We also granted leave to participate as amici curiae to the Attorney General; the National Employment Lawyers Association of New Jersey (NELA); and the American Civil Liberties Union of New Jersey (ACLU).

Plaintiffs settled their remaining claims against T&L before we heard oral argument.

II.

Plaintiffs argue that the Appellate Division made two essential errors. First, it "overturned Lehmann by finding that sexual touching does not automatically satisfy the 'but for' element" of an LAD claim for sexual harassment. Second, it erred in holding that "months of sexual touching to a victim's female-only anatomy is not even evidence" that harassment occurred "because of" the victim's sex for purposes of surviving a motion for summary judgment. Both conclusions, plaintiffs assert, "set[] the Lehmann standard on its head," are "contrary to the intent of [the] LAD," and "make[] no sense."

13

Plaintiffs also maintain that the Appellate Division erred in failing to address their motions (1) to amend their complaint to include an age discrimination claim under the LAD and a claim for common law sexual harassment; and (2) to compel discovery of evidence from Avenel and the CCPO related to Dean's intent in abusing C.V.

All amici support plaintiffs. The Attorney General argues that Lehmann's rule that sexual touching automatically satisfies the requirement that harassment occur "because of" sex is correct because "[w]henever a harasser engages in sexual touching of any other person's genitals or other sex-specific anatomy, that harassing conduct targets aspects of a victim's anatomy that are inextricably linked to their sex and, in that respect, is necessarily 'because of' sex." The Appellate Division's rule that "if a harasser has sexually abused at least one girl and one boy" in the past, "the victims' LAD claims" will inevitably fail, the Attorney General maintains, "is akin to stating a supervisor who repeatedly sexually abused female employees could not face LAD liability because he had once sexually molested a single male, decades before, outside of work." The Attorney General also contends that the Appellate Division's holding contravenes Division on Civil Rights (DCR) regulations that define "sexual harassment" to "automatically encompass[] all 'physical conduct of a sexual nature.'" (quoting N.J.A.C. 13:69K-1.2).

14

NELA also relies on DCR's LAD-implementing regulations, and contends that under Lehmann, "[i]t is only when the harassment is not obviously sex-based that the victim must also establish that the complained-of conduct occurred 'because of sex.'" (quoting Lehmann, 132 N.J. at 605). NELA posits that when the harassing conduct is "facially sex-based such as sexual touching" or "overtly sexual," the "because of sex" prong is automatically satisfied. The Appellate Division's contrary holding, NELA urges, turns thirty-years of "precedent on its head." Moreover, whether any harasser "acted out of some self-described purported compulsion" is irrelevant because the LAD is not "'a fault- or intent-based statute,'" NELA asserts. (quoting Lehmann, 132 N.J. at 604).

The ACLU maintains that this is a case about stare decisis: Lehmann created a per se rule that sexual touching automatically satisfies the "but for" prong of a sexual harassment claim, and the Appellate Division rejected that holding by improperly characterizing Lehmann's categorical rule as a "presumption" that it was free to reject.

Waterford defends the Appellate Division's decision, which, it insists, did not overturn Lehmann. According to Waterford, plaintiffs' position boils down to the assertion that "any sexual molestation perpetrated by an adult of a child in a place of public accommodation is a per se violation of the NJLAD."

15

(emphasis omitted). The LAD does "not identify sexual molestation as a per se example of discrimination" (emphasis omitted), Waterford explains, "despite enumerating no less than fifteen categories of" discrimination, including discrimination based on race, national origin, sex, gender identity or expression, sexual orientation, etc. See N.J.S.A. 10:5-12. If the Legislature had intended "all (child) sexual abuse claims to fall under the" LAD, Waterford reasons, "it would have specifically enumerated same as a cause of action." Because there is "no legal precedent for extending the NJLAD to acts of child sexual abuse committed by an adult," Waterford asserts, the judgment of the Appellate Division must be affirmed.

III.

A.

We review decisions granting summary judgment de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A grant of summary judgment is appropriate if "there is no genuine issue as to any material fact" and the moving party is entitled to judgment "as a matter of law." R. 4:46-2(c). We therefore "must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Samolyk, 251 N.J. at 78 (quoting Brill v. Guardian Life Ins.

16

Co. of Am., 142 N.J. 520, 540 (1995)). In ruling on a summary judgment motion, a court does not "weigh the evidence and determine the truth of the matter"; it only "determine[s] whether there is a genuine issue for trial." Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). Summary judgment is appropriate only when "the evidence 'is so one-sided that [the moving] party must prevail as a matter of law.'" Ibid. (quoting Petro-Lubricant Testing Labs, Inc. v. Adelman, 233 N.J. 236, 257 (2018)).

We review questions of statutory interpretation de novo as well. W.S. v. Hildreth, 252 N.J. 506, 518 (2023). In construing statutes, "[t]he overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent." State v. Hudson, 209 N.J. 513, 529 (2012). "There is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose," and we thus "first look to the plain language of the statute." Perez v. Zagami, LLC, 218 N.J. 202, 209-10 (2014).

Under Rule 4:9-1, motions for leave to amend a complaint must "be granted liberally," but the decision is left to the trial "court's sound discretion." Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 456-57 (1998). When a party moves to amend a complaint after the time to amend as-of-right has passed, the court's "exercise of discretion requires a

17

two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would . . . be futile." Notte v. Merchs Mut. Ins. Co., 185 N.J. 490, 501 (2006). Granting an amendment would be futile, and leave to amend properly denied, "when the newly asserted claim is not sustainable as a matter of law. In other words, there is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted." Ibid.

B.

1.

The New Jersey Law Against Discrimination was enacted in 1945. "Its purpose is 'nothing less than the eradication "of the cancer of discrimination."'" Lehmann, 132 N.J. at 600 (quoting Fuchilla v. Layman, 109 N.J. 319, 334 (1988)).

In the LAD, the Legislature announced "that practices of discrimination against any [New Jersey] inhabitants, because of . . . sex . . . are matters of concern to the government of the State, and that such discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and foundation of a free democratic State." N.J.S.A. 10:5-3. The Legislature also explicitly found that "because of discrimination, people suffer personal hardships, and the State suffers a grievous harm." Ibid.

18

It therefore provided: "All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . sex." N.J.S.A. 10:5-4. The Legislature specifically "recognized" and "declared" that "opportunity . . . to be a civil right." Ibid.

The LAD makes it "unlawful" for an employer to discriminate against any "individual in . . . [the] terms, conditions or privileges of employment," "because of . . . sex." N.J.S.A. 10:5-12(a). It also makes it "unlawful" "[f]or any owner . . . manager, . . . agent, or employee of any place of public accommodation" to "discriminate against any person in the furnishing" of any of the "accommodations, advantages, facilities or privileges" of "any place of public accommodation" in this state "on account of . . . sex." Id. at (f). A place of public accommodation includes "any kindergarten, primary and secondary school." N.J.S.A. 10:5-5(*l*).

As quoted, the LAD proscribes discrimination "because of" sex in employment. N.J.S.A. 10:5-12(a). In places of public accommodation, discrimination "on account of" sex is forbidden. Id. at (f). Yet despite this difference in wording, the protections against sex discrimination in employment and places of public accommodation are the same because "the ordinary meaning" of the phrase "'because of' is . . . 'on account of.'"

19

Bostock v. Clayton County, 590 U.S. \_\_\_, 140 S. Ct. 1731, 1739 (2020) (emphasis added) (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 350 (2013)) (interpreting a provision of Title VII of the Civil Rights Act of 1964).

"Because of" and "on account of" both incorporate the "'traditional' standard of but-for causation." Ibid. (citing Nassar, 570 U.S. at 346). Under that standard, one event can have multiple but-for causes. In the context of anti-discrimination law, that means "a defendant cannot avoid liability just by citing some other factor that contributed to its challenged . . . decision. So long as the plaintiff's sex was one but-for cause of that decision," liability may attach. Ibid.

### 2.

The text and legislative history of the LAD are "silent on the subject of sexual harassment." Lehmann, 132 N.J. at 600; see also N.J.S.A. 10:5-12. The same is true for Title VII of the Civil Rights Act of 1964. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63-64 (1986); 42 U.S.C. § 2000e-2.

In 1986, the Supreme Court adopted the Equal Employment Opportunity Commission's position that "sexual harassment," including "[u]nwelcome . . . physical conduct of a sexual nature," constitutes sex discrimination under Title VII. Meritor, 477 U.S. at 65 (alteration in original)

20

(quoting 29 C.F.R. § 1604.11(a) (1985)).  We followed in 1993, holding that "[s]exual harassment is a form of sex discrimination that violates both Title VII and the LAD."  Lehmann, 132 N.J. at 601.

That holding is grounded in the recognition that workplace sexual harassment constitutes "discriminat[ion] . . . because of . . . sex" in the "terms, conditions, or privileges of employment."  Meritor, 477 U.S. at 63-66 (quoting 42 U.S.C. § 2000e-2(a)(1)).  Similarly, sexual harassment in a place of public accommodation constitutes discrimination "on account of . . . sex" "in the furnishing" of "any of the accommodations, advantages, facilities or privileges" of "any place of public accommodation."  N.J.S.A. 10:5-12(f); see also L.W., 189 N.J. at 401.

In Lehmann, we recognized two types of actionable sexual harassment: (1) "[q]uid pro quo sexual harassment," "when an employer attempts to make an employee's submission to sexual demands a condition of . . . employment"; and (2) "[h]ostile work environment sexual harassment," "when an employer or fellow employees harass an employee because of . . . sex to the point at which the working environment becomes hostile."  123 N.J. at 601.  We then announced a four-part test "[t]o state a claim for hostile work environment sexual harassment":  a plaintiff must allege conduct that "(1) would not have occurred but for the employee's gender"; and that "was (2) severe or pervasive

21

enough to make a (3) <u>reasonable woman</u> believe that (4) the conditions of employment are altered and the <u>working environment is hostile or abusive</u>." <u>Id.</u> at 603-04.[1]

On the first prong, whether the conduct occurred because of sex, or "would not have occurred <u>but for</u> the employee's gender," we elaborated: "<u>When the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied. Thus when a plaintiff alleges that she has been subjected to sexual touchings . . . she has established that the harassment occurred because of her sex</u>." <u>Id.</u> at 605 (emphasis added). On the other hand, "[w]hen the form of the harassment is <u>not obviously based on the victim's</u>

---

[1] Although we framed the test in terms of what a woman must allege, we explicitly acknowledged that "[t]he LAD protects both men and women and bars both heterosexual and homosexual harassment." <u>Id.</u> at 604. The reasonable person perspective in prong three, we held, must be both "objective and gender[] specific." <u>Id.</u> at 612.

After our decision in <u>Lehmann</u>, the LAD was explicitly amended to prohibit discrimination not only because of sex, but also because of "affectional or sexual orientation" and "gender identity or expression." <u>See, e.g.</u>, N.J.S.A. 10:5-12(a) & (f). It therefore prohibited discrimination and harassment against transgender, non-binary, and gender nonconforming people long before the United States Supreme Court's decision in <u>Bostock</u>.

Though our decision in <u>Lehmann</u> used the words "sex" and "gender" interchangeably, we recognize that biological sex and gender identity and expression are distinct. We use the word "sex" in this opinion because C.V. claims she was subjected to sexual harassment, or discrimination "on account of . . . sex" in violation of N.J.S.A. 10:5-12(f).

sex," such as, for example, stealing case files or vandalizing personal property, "the victim must make a prima facie showing that the harassment occurred because of her sex." Ibid. (emphasis added). Because the plaintiff in Lehmann had alleged "sexual comments and touchings," we held she satisfied the requirement "that the conduct occurred because of her sex." Id. at 606.

We first confronted sexual harassment in a school setting in L.W. Beginning in fourth grade, L.W. was subjected to frequent verbal harassment by classmates based on his perceived sexual orientation. 189 N.J. at 390. In seventh grade, three students approached L.W., calling him "gay" and "faggot," then grabbed his "private area" and "humped" him while yelling "Do you like it?" Id. at 392. L.W. was also physically assaulted and attacked by students. Id. at 392-96. L.W.'s mother filed a complaint on his behalf with the Division on Civil Rights, alleging that L.W. was repeatedly subjected to harassment by his peers based on his perceived sexual orientation, and that the school district's failure to take effective remedial action violated the LAD. Id. at 397.

After a hearing, an Administrative Law Judge (ALJ) held that a "cause of action against a school district for student-on-student sexual harassment was not cognizable under the LAD." Ibid. In the alternative, the ALJ concluded that if the LAD did allow for such a claim, it should be governed by the

23

standards that applied to claims brought under Title IX of the Education Amendments of 1972 (Title IX), which prohibits sex discrimination in schools that receive federal funding. See ibid.; 20 U.S.C. § 1681(a). The United States Supreme Court had previously interpreted Title IX to allow a private right of action against a school board for "student-on-student sexual harassment" "only where the [school] acts with deliberate indifference to known acts of harassment." L.W., 189 N.J. at 397 (quoting Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999)); see also id. at 404. The ALJ explicitly refused to apply Lehmann's standard for hostile-work-environment sexual harassment claims under the LAD. Id. at 397.

The Director of the Division on Civil Rights rejected the ALJ's decision. The Director concluded that the LAD does recognize a claim of hostile school environment harassment against a school district. The Director also decided that such a claim should be governed by standards "similar to those established . . . in Lehmann," not Title IX's deliberate indifference standard. Ibid. (omission in original).

We affirmed the Director's decision. Adapting the Lehmann four-prong test to a school setting rather than a workplace, we held that to state a claim under the LAD for student-on-student hostile school environment harassment, "an aggrieved student must allege": (1) "discriminatory conduct that would

24

not have occurred 'but for' the student's protected characteristic," i.e., sex, sexual orientation, gender identity or expression, race, etc.; (2) "that a reasonable student of the same age, maturity level, and protected characteristic would" (3) "consider sufficiently severe or pervasive enough" (4) "to create an intimidating, hostile, or offensive school environment," and (5) "that the school district failed to reasonably address such conduct." Id. at 402-03.

In concluding "that the Lehmann standard should apply in the workplace and in the school setting," we explicitly "reject[ed] the Title IX deliberate indifference standard" adopted by the United States Supreme Court. Id. at 405. We did so because we determined that "as a matter of state law it would be unfair to apply a more onerous burden on aggrieved students than on aggrieved employees" -- "[s]tudents in the classroom are entitled to no less protection from unlawful discrimination and harassment than their adult counterparts in the workplace." Id. at 406 (citations omitted); see also Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 196 (2008) (reaffirming that the Lehmann standard applies to sexual harassment claims outside the employment context, including in a university setting).

Underlying that holding was the "basic principle" that sexual harassment is just as unacceptable in a school as it is in the workforce. L.W., 189 N.J. at 407. As we explained, "a school district's 'first imperative must be to do no

25

harm to the children in its care.'"  Id. at 406 (quoting Frugis v. Bracigliano, 177 N.J. 250, 268 (2003)).  A school board must therefore "take reasonable measures to assure that the teachers and administrators who stand as surrogate parents during the day are educating, not endangering, and protecting, not exploiting, vulnerable children."  Ibid. (quoting Frugis, 177 N.J. at 268).

However, we also recognized that when considering a school district's or employer's liability for harassment, student-on-student sexual harassment differs from supervisory sexual harassment in the workplace.  We therefore held that a school district may only "be found liable under the LAD for student-on-student . . . harassment . . . when the school district knew or should have known of the harassment, but failed to take action reasonably calculated" to stop it.  Id. at 407.  That is similar to the standard of employer liability for co-worker harassment, rather than supervisory harassment, in the workplace. See, e.g., Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (holding that, under Title VII, "employer liability for co-worker harassment exists only if . . . the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action").

IV.

A.

The Appellate Division's decision affirming the dismissal of counts two and three of plaintiffs' complaint conflicts with <u>Lehmann</u> and <u>L.W.</u>  We therefore reverse that portion of the judgment.

As earlier noted, in <u>Lehmann</u> we explicitly held that "[w]hen the harassing conduct is sexual . . . in nature," the first prong of a claim for hostile-environment sexual harassment, which asks whether the harassing conduct occurred <u>because of sex</u>, or "would not have occurred <u>but for</u>" the <u>person's sex</u>, "will automatically be satisfied."  132 N.J. at 605 (emphasis added).  We made clear that "when a plaintiff alleges that she has been subjected to sexual touchings . . . she has established that the harassment occurred because of her sex."  <u>Ibid.</u>

For good reason.  Sexual touching of a person's genitals or other sex-specific anatomy is inescapably "because of" that person's sex.  As the Attorney General correctly notes, "[w]henever a harasser engages in sexual touching of any other person's genitals or other sex-specific anatomy, that harassing conduct targets aspects of a victim's anatomy that are inextricably linked to their sex and, in that respect, is necessarily 'because of' sex."

27

It is therefore unsurprising that other courts have likewise held that sexual touching of a person's genitals or areas of the body linked to sexuality is "because of" sex.  See, e.g., Rene v. MGM Grand Hotel, Inc., 305 F.3d 1061, 1065-66 (9th Cir. 2002) (en banc) (collecting federal circuit court cases holding that "physical conduct of a sexual nature" or a "[p]hysical sexual assault," meaning touching "areas of the body linked to sexuality," is "inescapably 'because of . . . sex'"); Doe v. City of Belleville, 119 F.3d 563, 580 (7th Cir. 1997) ("[W]hen one's genitals are grabbed . . . and when one is threatened with sexual assault, it would seem to us impossible to de-link the harassment from the gender of the individual harassed."), vacated on other grounds, 523 U.S. 1001 (1998); Little v. Windermere Relocation, Inc., 301 F.3d 958, 967-68 (9th Cir. 2002) (finding that "[r]ape is unquestionably among the most severe forms of sexual harassment" and that "[b]eing raped is, at minimum, an act of discrimination based on sex"); Doe v. Sch. Dist. No. 1, Denver, 970 F.3d 1300, 1311 (10th Cir. 2020) (finding that student-on-student sexual assault "was an act of sex discrimination"); Kramer v. Wasatch Cnty. Sheriff's Off., 743 F.3d 726, 743 (10th Cir. 2014) ("[R]ape is inarguably a severe form of sexual harassment . . . ."); Redd v. N.Y. Div. of Parole, 678 F.3d 166, 180 (2d Cir. 2012) ("Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment . . . ."); cf.,

28

Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 & n.3 (3d Cir. 1990) (holding that "[a] more fact intensive analysis" of whether the complained-of harassment was "because of sex" "will be necessary" only "where the actions are not sexual by their very nature" (emphasis added)).

Here, plaintiffs presented evidence that C.V. was subjected to five months of unwanted sexual touching of her vagina. Under Lehmann, that touching was inherently "because of" C.V.'s sex.

The Appellate Division held the opposite. According to the Appellate Division, not only was sexual touching of C.V.'s vagina not automatically "because of" C.V.'s sex under Lehmann, but it could not, as a matter of law, be "because of" C.V.'s sex. That is twice wrong.

The Appellate Division held that "there was no evidence that [Dean's] compulsive and repetitive behavior was the result of any proven intention to discriminate specifically against young women." C.V., 472 N.J. Super. at 584. The trial court likewise held that "the but for element can't be satisfied . . . where you have a compulsive sexual predator, a pedophile."

But as we held in Lehmann, "[t]he LAD is not a fault- or intent-based statute." 132 N.J. at 604. Because "[t]he purpose of the LAD is to eradicate discrimination, whether intentional or unintentional," plaintiffs need not show that an employer or place of public accommodation "intentionally

29

discriminated [against] or harassed [them], or <u>intended to</u> create a hostile . . . environment." <u>Id.</u> at 604-05 (emphases added). Indeed, "[a]lthough unintentional discrimination is perhaps less morally blameworthy than intentional discrimination, it is not necessarily less harmful in its effects, and it is at the effects of discrimination that the LAD is aimed." <u>Id.</u> at 605 (emphasis omitted).

Therefore, even if the Appellate Division were correct that Dean's conduct was "fueled by his pedophilia," and not by any intent to discriminate "because of [C.V.]'s gender," <u>C.V.</u>, 472 N.J. Super. at 598, "the perpetrator's intent is simply not an element of the cause of action," <u>Lehmann</u>, 132 N.J. at 605.

The Appellate Division also found "no evidence that [Dean] acted because of [C.V.]'s gender" because of "his own deposition testimony and history of sexual abuse towards at least one boy." <u>C.V.</u>, 472 N.J. Super. at 598. The trial court too held that Dean's conduct could not have been because of C.V.'s sex because "he is a compulsive sexual abuser of children, boys and girls." In so doing, both courts relied on Dean's self-serving deposition testimony and either did not consider "the competent evidential materials" plaintiffs presented, or failed to view them "in the light most favorable to"

plaintiffs. Samolyk, 251 N.J. at 78. That disregards our responsibility in assessing a motion for summary judgment.

For example, the Appellate Division stated "that although plaintiffs argue that [Dean] only abused girls on the bus, there is no evidence in the record that was true." C.V., 472 N.J. Super. at 587 n.5. That is incorrect, and it does not view the evidence in the light most favorable to plaintiffs.

In contending that Dean was accused only of abusing other girls, and not boys, on the bus, plaintiffs submitted four pieces of supporting evidence: (1) an arbitral award against Waterford finding that Dean sexually assaulted J.D., a four-year-old girl on C.V.'s school bus, in the same way he assaulted C.V.; (2) a forensic psychiatric evaluation report in which a doctor concluded that another girl, "Lauren," was sexually abused by Dean on the school bus and C.V. likely witnessed that abuse; (3) McDonnell's statement to the CCPO, before he died in 2011, that Dean would regularly "play magic wands" with multiple girls on the bus, and his response "I don't think so," to the CCPO's investigator's question "Did he play abracadabra with any of the boys?"; (4) a court order consolidating plaintiffs' case with another case brought by a girl named G.G. making the same allegations against the same parties.

When viewed in the light most favorable to plaintiffs, as we must on defendants' motion for summary judgment, that evidence is more than

"sufficient to permit a rational factfinder to resolve the alleged disputed issue" -- whether Dean abused other girls on the bus -- "in favor of" plaintiffs. See Samolyk, 251 N.J. at 78.

There are two other serious problems with the Appellate Division's conclusion that there could be no discrimination "because of" sex as long as Dean had sexually assaulted one boy in the past. The Attorney General analogizes that holding as "akin to stating a supervisor who repeatedly sexually abused female employees could not face LAD liability because he had once sexually molested a single male, decades before, outside of work." We agree. Even if Dean sexually assaulted boys in the past, that would not preclude a holding that Dean's conduct as to C.V. was because of C.V.'s sex.

Second, even if Dean had sexually touched the genitals of both girls and boys on the school bus, which there is no evidence that he did, that would not preclude liability for sexual harassment. It is no "defense for an employer to say it discriminates against both men and women because of sex." Bostock, 140 S. Ct. at 1741. As the Supreme Court has explained, "an employer who fires a woman . . . because she is insufficiently feminine and also fires a man . . . for being insufficiently masculine may treat men and women as groups more or less equally." Ibid. But in both scenarios, the "employer fires an individual in part because of sex. Instead of avoiding Title VII exposure,

32

this employer doubles it." Ibid. So too for sexual harassment claims under the LAD. It is not a defense "[f]or any owner, . . . manager, . . . agent, or employee of any place of public accommodation," N.J.S.A. 10:5-12(f), to say they did not discriminate "on account of" sex because they sexually touched the genitals of both male and female patrons or students.

The Appellate Division's conclusion that plaintiffs could not state a claim under the LAD because there was "no evidence [Dean's] actions were based solely on [C.V.]'s status as a member of a protected group," C.V., 472 N.J. Super. at 593 (emphasis added), likewise misapprehends the law. A plaintiff does not need to show that membership in a protected class was the sole reason for the discrimination or harassment; only that it was a motivating factor.

As the Supreme Court recently reiterated, "the plaintiff's sex need not be the sole or primary cause of the employer's adverse action" in order for liability to attach under Title VII. Bostock, 140 S. Ct. at 1744. As long as the plaintiff's sex is "one but-for cause" of the action, "that [is] enough." Id. at 1745; see also id. at 1743 ("That an employer discriminates . . . against an individual only in part because of sex supplies no defense to Title VII.").

Similarly, under the LAD a "'plaintiff need not prove that [the protected characteristic] was the sole or exclusive consideration' . . . ; rather, he need

33

only show 'by a preponderance of the evidence that it made a difference' in that decision." Bergen Com. Bank v. Sisler, 157 N.J. 188, 211 (1999) (quoting Murray v. Newark Hous. Auth., 311 N.J. Super. 163, 174 (Law Div. 1998)).

Waterford asserts that the Legislature could not possibly have intended for the LAD to apply in this type of case: "If the legislature intended any sexual contact, any molestation, any sexual assault to fall under the LAD, they would have said so plainly and unambiguously in the text of the LAD." Waterford is correct that the relevant provision of the LAD does not include the words "molestation" or "sexual assault." See N.J.S.A. 10:5-12(f). However, it does explicitly prohibit discrimination on account of sex "in the furnishing" of any of the "accommodations, advantages, facilities or privileges of any . . . place of public accommodation." Ibid.

In Lehmann, we held that sexual harassment is a form of sex discrimination under the LAD, and that sexual touching automatically occurs "because of" sex. Lehmann was decided thirty years ago. It interpreted the LAD, not our Constitution. If the Legislature had disagreed with our holding, either in 1993 or at any time since, that sexual harassment is a form of sex discrimination under the LAD, or that sexual touching of a person's sex-specific anatomy or areas of the body linked to sexuality automatically occurs "because of" sex, it could have amended the LAD to overrule our decision.

34

See, e.g., In re Adoption of Children by G.P.B., Jr., 161 N.J. 396, 405 (1999) (recognizing that the Court's previous decision interpreting N.J.S.A. 9:3-46 had been superseded by the Legislature's amendment to that statute). It has not done so.

Waterford is correct that sexual touching of a person's intimate body parts was likely "not the principal evil [the Legislature] was concerned with when it enacted" the LAD in 1945. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998). But "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." Ibid. That is true even if the enacting legislature did not "expect" that a provision would apply in a particular way. See Bostock, 140 S. Ct. at 1749-53. The LAD prohibits discrimination "on account of . . . sex" in places of public accommodation. Under our prior precedent, sexual touching happens "because of" sex, and the words "on account of . . . sex" in the public accommodations provision and "because of . . . sex" in the employment provision, see N.J.S.A. 10:5-12(a) & (f), mean the same thing. Waterford may therefore be liable under the language of N.J.S.A. 10:5-12(f).

Second, Waterford asserts, plaintiffs have alternative remedies in this case, including under the Child Sexual Abuse Act, N.J.S.A. 2A:61B-1. See W.S. v. Hildreth, 252 N.J. 506, 518 (2023). That is neither here nor there. As

35

counsel for Waterford conceded at oral argument, the LAD supplements, rather than supplants, other civil and criminal remedies and causes of action.  See, e.g., J.M.L. v. A.M.P., 379 N.J. Super. 142 (App. Div. 2005) (reviewing elements of the same criminal statute Dean was convicted of violating here, N.J.S.A. 2C:14-2, to complement and inform -- not displace -- the appellate court's analysis of the plaintiff's LAD claim).

Defendants' remaining two arguments are easily addressed.  First, Waterford contends that it cannot be held liable under the LAD because the abuse "occurred on a school bus," and not "on school grounds."  As the Appellate Division correctly noted, we have already held "that a school bus is 'a place of public accommodation'" under the plain language of N.J.S.A. 10:5-5(*l*).  C.V., 472 N.J. Super. at 597 (quoting L.W., 189 N.J. at 401).  Second, before the trial court, T&L argued that "[r]eferences to . . . cases from the employment context just simply don't fit."  In L.W., we explicitly held "that the Lehmann standard should apply in the workplace and in the school setting."  189 N.J. at 405.  Therefore, under that precedent, employment cases, at least when it comes to sexual harassment, do fit.[2]

---

[2]  This Court has never decided what standard of liability should apply to a school district in a case of sexual harassment perpetrated by a school employee, and not a fellow student.  In Lehmann, we discussed at length the standards for "employer liability" under the LAD when "a plaintiff establishes that she was sexually harassed by her supervisor."  132 N.J. at 615-27

B.

We affirm the Appellate Division's judgment as to plaintiffs' motions to amend their complaint and to obtain records of Dean's intent from Avenel and the CCPO.

Amending plaintiffs' complaint to add a claim of age discrimination in violation of the LAD would indeed have been futile, see Notte, 185 N.J. at 501, but not for the reasons stated by the trial court. It would have been futile because the LAD does not prohibit age discrimination in places of public accommodation. Although the LAD makes it "unlawful" for an employer to discriminate "because of . . . age" in employment, N.J.S.A. 10:5-12(a), there is no comparable prohibition on places of public accommodation, including schools. Rather, the LAD makes it "unlawful" for "any owner . . . manager, . . . agent, or employee of any place of public accommodation" to "discriminate against any person in the furnishing" of any of the "accommodations, advantages, facilities or privileges" of "any place of public

_____

(emphasis added). In L.W., we held that a school district may only be liable under the LAD for student-on-student harassment that creates a hostile school environment "when the school district knew or should have known of the harassment, but failed to take action reasonably calculated to end" it. 189 N.J. at 407. We said nothing in L.W. about what standard of liability would apply if the harasser were a school district employee or agent, rather than a peer. Because the parties have not asked us to answer that question in this case, we do not do so.

accommodation" on account of many protected characteristics, including sex, race, national origin, etc. N.J.S.A. 10:5-12(f). Age is not one of them. We therefore affirm that part of the Appellate Division's judgment denying plaintiffs' request to amend their complaint to include a claim for age discrimination in violation of the LAD.

As to plaintiffs' request to amend their complaint to state a claim for common law sexual harassment once the LAD sexual harassment claims were dismissed, we have already held that dismissal of the LAD claims was improper. We therefore do not reach plaintiffs' request. Finally, given that Dean's subjective intent is irrelevant to plaintiffs' sexual harassment claims under the LAD, plaintiffs' reason for seeking Dean's records from Avenel and the CCPO is now moot. We therefore affirm the denial of plaintiffs' motions to compel, but for different reasons from those stated by the trial court.

V.

The judgment of the Appellate Division is reversed in part and affirmed in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and FASCIALE join in JUSTICE WAINER APTER's opinion. JUDGE SABATINO (temporarily assigned) did not participate.